[Civ. No. 68324. Second Dist., Div. Four. Aug. 24, 1983.]

OMEGA VIDEO INCORPORATED, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ROBERT BOSCH CORPORATION et al., Real Parties in Interest.

472

COUNSEL

Ayscough, Marar & Parke and Brent Ayscough for Petitioner.

No appearance for Respondent.

Lillick, McHose & Charles, Robert L. Morrison, Gerald R. Whitt and Mason C. Brown for Real Parties in Interest.

OPINION

KINGSLEY, Acting P. J.—This proceeding in mandate requires resolution of an apparent conflict between two principles of civil procedure which is created by an unlikely concurrence of pleading mistakes concerning a particular defendant. The first principle is that an entry of a general appearance on behalf of a defendant by an unauthorized attorney allows the defendant to withdraw from the action upon an evidentiary showing overcoming the rebuttable presumption that an attorney represents the persons for whom he professes to act. The second principle, founded upon the public policy in-

terest favoring trial of actions on their merits, is that a plaintiff may be allowed to bring a party into an action as defendant after the applicable statute of limitations has run in circumstances where although the plaintiff erred by designating an inappropriate entity (or nonentity) as a defendant, he is misled to believe the appropriate defendant has been named when an apparently effective general appearance is entered on behalf of the inappropriate defendant by counsel representing a related codefendant.

The following facts and analysis suggest that under the particular circumstances of this case the interests of justice compel the conclusion that the latter procedural rule should prevail.

FACTS:

The virtually complete record provided by the parties shows the following facts.

From 1973 to 1977 plaintiff acted as a distributor for video products supplied by Fernseh, which was then a "division" or "group" within the Robert Bosch Corporation.

Plaintiff commenced its action by filing an unverified complaint on August 18, 1978. The complaint named as defendants "Robert Bosch Corporation; Robert Bosch Corporation, subsidiary of Robert Bosch G.m.b.H.;[1] Fernseh, a corporation, and Does 1 through 20, inclusive." Plaintiff claims that defendants breached a written franchise agreement in June 1977, by terminating plaintiff as franchised distributor of video equipment marketed under the name "Fernseh" and "Bosch-Fernseh" and selling product directly to retailers. The complaint was served only upon the Robert Bosch Corporation.

On or about November 10, 1978, a demurrer and an answer to the complaint were filed. Both pleadings were prepared by the law firm Lillick, McHose & Charles, which designated itself thereupon as "Attorneys for Defendants." The pleading captions were identical to that of the complaint, including Fernseh as a named defendant corporation. The answer contained a general denial of all material allegations of the complaint. The Lillick law firm filed subsequent pleadings and papers in the action as "Attorneys for Defendants." On or about December 4, 1978, "defendants" filed a notice of removal of the demurrer from the court calendar. On April 3, 1979, plaintiff filed an amended complaint naming the identical defendants. On or

---

[1]Apparently, the first two defendants are the same entity.

about April 30, 1979, an answer was filed on behalf of "defendants" which generally denied all the material allegations of the amended complaint.

On June 1, 1979, "defendants" filed a notice of deposition. The notice commenced "Please take notice that defendants, Robert Bosch Corporation, Robert Bosch Corporation, subsidiary of Robert Bosch G.m.b.H., and Fernseh, will take the deposition upon oral examination of [plaintiff's president]."

Apparently, there was no further activity in the action until November 1982, when a mandatory settlement conference occurred. On or about November 11, 1982, Lillick, McHose & Charles sent a letter to plaintiff's new counsel of record advising that Fernseh was rejecting a settlement proposed to Fernseh, Inc. by plaintiff at the settlement conference. The letter threatened that suit would be filed against plaintiff by Lillick, McHose & Charles on behalf of Fernseh for merchandise plaintiff purchased from Fernseh, Inc. after 1979. The letter also stated "Fernseh is an entirely separate corporation from Robert Bosch Corporation. It was not even formed until almost two years after your lawsuit was filed."

On November 12, 1982, plaintiff propounded written interrogatories to Fernseh. No responses to the interrogatories were served by Fernseh and plaintiff moved to compel answers and obtain appropriate sanctions. The motion was premised upon the several pleadings of "defendants" described herein above. Plaintiff also relied upon hearsay declarations and an April 1982, article from an industry magazine "Electronic News" stating that Robert Bosch Corporation had formed Fernseh, Inc. in October 1979 as a joint venture with Bell & Howell and had, as of 1982, regained total ownership of Fernseh, Inc.

Written opposition to plaintiff's motion against Fernseh came in the form of argument contained in papers filed on behalf of defendant Robert Bosch Corporation in opposition to plaintiff's concurrent motion to compel further discovery from that defendant. This opposition argued that Fernseh was not a corporate entity at the time it transacted business with plaintiff or at the time the complaint was filed and served. At such times Fernseh was a "division" of Robert Bosch Corporation.

Respondent initially granted plaintiff's motion on February 15, 1983, and directed Fernseh to respond to interrogatories as a party. On March 7, Fernseh, Inc. filed a motion for reconsideration and, in the alternative, for an order allowing Fernseh, Inc. to withdraw the general appearance on its behalf as unauthorized. The pleading was designated by Fernseh, Inc. as a "special appearance." The application contained declarations confirming

that Fernseh, Inc. was first incorporated in October 1979, as the result of a 50-50 percent joint venture between Robert Bosch Corporation and Bell & Howell whereby a wholly owned subsidiary of Bell & Howell purchased the assets of the "Fernseh division" from Robert Bosch Corporation and changed its name to Fernseh, Inc. and continued to do an identical or very similar business in the original Fernseh "division" Salt Lake City, Utah location. Robert Bosch Corporation received, and at all times retained, a 50 percent ownership interest in Fernseh, Inc. and acquired total ownership in April 1982. The application also contained the declaration of a partner in Lillick, McHose & Charles averring that the firm had simply erred in not specifying that its pleadings were not intended to include Fernseh as a represented corporate defendant and that the law firm never had authority from any entity to represent Fernseh in the action. The motion advanced the sophic argument that the general denials set forth in defendants' answers to the unverified complaints put plaintiff on notice that the corporate status of defendant Fernseh was being denied. Fernseh, Inc. also argued the merits of the liability issue, denying it succeeded to any obligations of the Fernseh division.

On March 22, 1983, respondent granted the motion of Fernseh, Inc. and ruled that Fernseh, Inc. "Has not made a general appearance in" and "is not a proper party to" the action.

Plaintiff thereupon filed a motion for reconsideration of the March 22 order, citing as "changed facts" under Code of Civil Procedure section 1008 the fact that the Lillick law firm had recently commenced an action against plaintiff on behalf of Fernseh, Inc. in federal court.

Fernseh, Inc. filed another "special appearance" in opposition to plaintiff's motion for reconsideration. The opposition contained a declaration by one Mr. Magliocco, a sales manager for Fernseh, Inc., stating that plaintiff's president had confirmed to him "soon after" the incorporation of Fernseh, Inc. that Robert Bosch Corporation was a "totally separate corporation" from Fernseh, Inc. and that the pending action would not interfere with plaintiff's present business with Fernseh, Inc. Respondent denied plaintiff's motion for reconsideration on April 11, 1983.

The petition was filed March 31, 1983, with the promise that reporter's transcripts for the February 14 and March 22 hearings would be lodged. Neither transcript has yet been lodged.

The return filed July 6 points out that the petition inaccurately represents to this court that it was "filed instead of a motion for reconsideration" because insufficient time existed to notice a motion for reconsideration with

respondent. In fact, plaintiff had actually filed such a motion for reconsideration on March 25 and that motion was pending until hearing on April 7.

Petitioner filed a letter in reply to the return. The reply reargues old contentions but does not seek to explain the charges of misrepresentation raised in the return as to the inadequacy of legal remedies and petitioner's failure to lodge the reporters' transcripts.

We issued the alternative writ on April 26 without benefit of knowledge of the proceedings below occurring after March 22, which information was supplied by the return. We also issued a stay order temporarily suspending respondent's jurisdiction to try the action.

Discussion

At the outset it is important to point out that the question to be determined is not the merits of plaintiff's claim that defendant Fernseh, Inc. is liable as a successor in interest or under some other legal theory. Rather, the question is whether Fernseh, Inc. may withdraw the inappropriate unauthorized appearances effected on its behalf and thus avoid the obligation to defend against plaintiff's action. (Cf. *Foster* v. *Mooney Aircraft Corp.* (1968) 68 Cal.App.3d 887, 894 [137 Cal.Rptr. 694].) To determine the former question at this point would be to adjudicate the ultimate merits of the action without allowing plaintiff discovery of facts material to that ultimate issue. If Fernseh, Inc. is to remain a party to the action, the liability issue will be determined at a later appropriate time.

I. *A Named Defendant for Which a Formal General Appearance Has Been Effected by Counsel Without Authority to Do So May Withdraw Such Appearance. A Nonexistent Defendant May Not Enter an Effective Appearance.*

■ It has been held that a defendant for whom a general appearance has been entered by unauthorized counsel may withdraw from the action upon a sufficient factual showing to overcome the rebuttable presumption that an attorney has authority to appear for the person for whom he professes to act. (*Wilson* v. *Barry* (1951) 102 Cal.App.2d 778 [228 P.2d 331].) In *Wilson* general appearances were effected for all named defendants by the filing of a demurrer and other pleadings on their behalf by an attorney. Five months after filing of the first pleading, certain of the defendants moved to withdraw the general appearances upon their averments that they never authorized such representation and upon the attorney's averment that he misunderstood the extent of authority granted to him by one of the defendants with whom he had communicated. The withdrawing defendants had no connection with the attorney or the defendant who spoke with that attorney. It

was held on appeal from the order granting the withdrawals that defendants had made a sufficient showing of the lack of authorization to overcome the legal presumption that the attorney was authorized to represent them.

The correctness of the collateral principle relied upon by Fernseh, Inc. is self-evident. ■ A nonexistent entity may not be effectively served with summons as a named defendant and may not be subjected to jurisdiction of a court by an entry of a general appearance on its behalf.

■ Accordingly, the authority relied upon by Fernseh, Inc. supports the contention that it did not enter an effective general appearance at the time it did not exist as a corporate entity. However, this does not necessarily resolve the present dispute, which involves the prejudicial effect the false appearance might have worked against later service of Fernseh, Inc. as a proper party defendant after it was incorporated.

*Wilson* v. *Barry, supra,* 102 Cal.App.2d 788, did not address itself to the circumstance of a motion to withdraw an unauthorized appearance entered by counsel for a codefendant which has a significant ownership interest in the inappropriately designated defendant. Neither did *Wilson* consider the question whether entitlement to withdraw an unauthorized appearance after the running of the statute of limitations absolutely precludes subsequent service when the unauthorized nature of the appearance is not evident and the plaintiff will suffer dismissal of the action as to the intended defendant. *Wilson* gave no indication of the nature of the underlying action nor whether the plaintiff was prejudiced by the running of the applicable statute of limitations at the time the defendants were permitted to withdraw five months after their first appearance.

Even if *Wilson* could be read as implicitly determining these additional questions not raised by its recited facts, it is significant that *Wilson* was decided in 1951 before California courts began to view amendments to cure technical defects in pleading with a more liberal attitude to avoid miscarriages of justice. (Cf. *Garrett* v. *Crown Coach Co.* (1968) 259 Cal.App.2d 647 [66 Cal.Rptr. 590]; *Contract Engineers, Inc.* v. *California-Doran Heat Treating Co.* (1968) 258 Cal.App.2d 546 [65 Cal.Rptr. 776]; *Mayberry* v. *Coca Cola Bottling Co.* (1966) 244 Cal.App.2d 350, 355 [53 Cal.Rptr. 317]; *Hollister Canning Co.* v. *Superior Court* (1972) 26 Cal.App.3d 186 [102 Cal.Rptr. 713].)

Fernseh, Inc. cites no case holding that entitlement to withdraw an unauthorized appearance is absolute under all circumstances.

II. *Where a Plaintiff Errs in Designating a Defendant, Entry of an Inappropriate General Appearance on Behalf of an Erroneously Designated Defendant May Not Always Be Employed to Deprive the Plaintiff of a Trial on the Merits Against the Intended, Appropriate Defendant.*

 The procedural history of the present case admittedly places it within the category of "unauthorized appearance" cases. However, the unique and complicated procedural history here is also significantly analogous to more recent cases involving defenses of actions made on behalf of inappropriately designated defendants which are not only unauthorized by the designated defendant but are also spurious in the sense they are entered for a nonexistent entity or are inappropriate because the entity has no legal relationship at all with the subject matter of the action. These cases refuse to countenance such inappropriate appearances which perpetuate an otherwise potentially remediable pleading mistake beyond the running of the applicable statute of limitations by reason of negligent conduct attributable to counsel for an entity having an adverse interest in the action or having a financial interest in the intended defendant. The considerations recognized in these cases have application here.

In *Hollister Canning Co.* v. *Superior Court* (1972) 26 Cal.App.3d 186 [102 Cal.Rptr. 713], the plaintiff in an action for breach of a business contract mistakenly caused an individual sole proprietor to be designated and served as a corporation which did not exist. Attorneys, some of whom were personal attorneys for the individual, appeared in the action on behalf of the nonexistent corporation and ostensibly defended the action on its behalf. The applicable statute of limitations ran on the plaintiff's claim. Through later discovery plaintiff learned that the business he had sued as a corporation was actually a sole proprietorship and that no such corporation existed. Plaintiff thereupon moved to amend his complaint and designate and serve that individual as one of the defendants previously sued therein by a fictitious name. It was held that under such circumstances it would be "a miscarriage of justice" to allow the true individual defendant to enjoy the benefit of the running of the applicable statute of limitations and not be subject to suit as a fictitious defendant when his true capacity was concealed by the uncalled-for general appearances. The court observed "This is not to say that there was a duty on anyone to appear for Swett individually, [footnote] or to advise the [plaintiff] of his true capacity, it is only to hold that under the circumstances of this case real party [Swett, the individual] is not in a position to object to being brought in as a fictitious defendant." (At pp. 197-198.)

Although *Hollister Canning* is distinguishable from the present case in its precise factual aspects, these differences are not material for purposes of

present analysis. The overriding principle there was to prevent a miscarriage of justice. *Hollister Canning* did not make any determination whether the inappropriate appearances made on behalf of the nonexistent corporation were intended to deceive the plaintiff into omitting timely service upon the correct defendant, or, rather, were merely the result of mistaken representation by defense counsel, as is claimed in the present case.

A significant parallel existing between *Hollister Canning* and the present case is that the unauthorized and inappropriate general appearance was entered on behalf of the nonexistent defendant by counsel employed by an entity which is closely related to the intended defendant and itself has a financial interest in the action. These cases are distinguishable from *Wilson v. Berry, supra,* 102 Cal.App.2d 778, where the defendants had no relationship whatsoever to the defendant and counsel causing the unauthorized appearances.

Another analogous case involving a prejudicial perpetuation of a plaintiff's misdesignation of parties is *Mayberry v. Coca Cola Bottling Co.* (1966) 244 Cal.App.2d 350 [53 Cal.Rptr. 317]. There the plaintiff mistakenly named and served a corporation instead of a similarly named partnership for injury sustained from a contaminated bottle. The partners were also directors of the corporation which conducted different aspects of an integrated business with the partnership. Counsel for the corporation entered its general appearance by answer and alleged an affirmative defense of contributory negligence. Neither the true tortfeasor partnership nor the corporation hinted of the mistaken designation of parties. The applicable statute of limitations ran and during trial it was revealed that the partnership was the true intended defendant. The corporation was dismissed from the action. Plaintiff served the partnership as a defendant and the partnership's demurrer based on the running of the statute of limitations was sustained and the action was dismissed as to the partnership. On appeal it was held that the partnership must be deemed to have been a proper party defendant from the commencement of the action.

The close relationship between the two entities in *Mayberry* and the "series of steps by the corporate defendant which could only perpetuate plaintiff's error beyond the point of repair" were found sufficient circumstances to justify this result. *Mayberry* noted that ordinarily the plaintiff's proper remedy would be to name and serve the partnership as a fictitiously named defendant under section 474 of the Code of Civil Procedure. But because the defendant corporation's conduct caused plaintiff to dismiss all such fictitiously named defendants prior to trial, the direct relief provided was required.

Significantly, in rejecting the old rule restricting judicial relief upon a misdesignation of the true capacity of a party the court in *Mayberry* commented, ". . . neither does it consider modern business practices, which often divide integrated business operations—if only for tax purposes— among a group of artificial legal entities." (At p. 353.)

Like the defendants in *Hollister Canning, supra,* 26 Cal.App.3d 186, and *Mayberry, supra,* 244 Cal.App.2d 350, Fernseh, Inc. has at all times been closely related to defendant Robert Bosch Corporation as a "division" and later as a separate corporation constituting a "joint venture" in which Robert Bosch Corporation at all times owned at least a 50 percent interest. While there is perhaps no duty owed by Robert Bosch Corporation or the newly incorporated Fernseh, Inc. to advise plaintiff that his designation of Fernseh did not result in an effective general appearance by any existing entity in 1979, the relationship and common financial interest of these two entities is analogous to that recognized in *Mayberry* and *Hollister Canning* as an inferable source of reasonable confusion by the plaintiff and of awareness by the intended defendant of plaintiff's mistake.

It is also significant in this respect that Lillick, McHose & Charles transmitted a settlement offer made by plaintiff at the mandatory settlement conference to Fernseh, Inc. and then transmitted Fernseh, Inc.'s rejection of that offer to plaintiff by letter. Additionally, that law firm threatened to, and did, file a separate action against plaintiff on behalf of Fernseh, Inc.

In addition to the principles recognized in *Hollister Canning* and *Mayberry* there are two strong public policy considerations favoring relief in the present case.

The first consideration is that retaining Fernseh, Inc. as a defendant in the action merely requires it to defend on the merits. In contrast, a dismissal of Fernseh, Inc. wholly deprives plaintiff of the opportunity to litigate the merits against that defendant. (*Norton* v. *Hines* (1975) 49 Cal.App.3d 917, 920-921 [123 Cal.Rptr. 237]; *Held* v. *Arnet* (1977) 67 Cal.App.3d 748, 751-752 [134 Cal.Rptr. 422].)

■ It is the present state of California law that an attorney may not be sued for negligent representation of a client by an adverse party in an action who claims to have suffered resulting injury from such negligence. In *Norton* v. *Hines, supra,* 49 Cal.App.3d 917, the successful defendant in a prior action attempted to sue the counsel for the plaintiff for negligence in prosecuting the unmeritorious action. *Norton* rejected the proposed theory of liability that injury to a third party resulting from an attorney's negligent representation of his client should extend in scope to all persons for whom

the resulting injury was reasonably foreseeable. *Norton* instead adhered to the established rule that only third parties who are intended beneficiaries of the attorney's representation of his client have a cause of action for the negligent representation.

Although not expressed in *Wilson* v. *Barry* the strong public policy favoring trial on the merits does not allow serious dispute that the fundamental consideration of the rule set forth there is merely to protect defendants from being brought into actions by unauthorized appearances; it is not to allow defendants to wholly avoid liability in the action by allowing an unauthorized and inappropriate appearance as devices to conceal the lack of jurisdiction over them until jurisdiction may not be regularly invoked. While a defendant is entitled to assert the unauthorized nature of an appearance on his behalf and require that he be brought into the action by regular process, it is not in the interests of justice to permit such defendant and related defendants to capitalize on the spurious appearance when sufficient time has passed.

The second important policy consideration applicable here is the procedural unfairness inherent in the procedure by which defendant seeks to withdraw from the action. It places plaintiff at the significant disadvantage of having to submit evidence rebutting defendant's claim that equity requires dismissal, yet precludes plaintiff from conducting any discovery on the jurisdictional issues. ■ It is well established in the area of motions to quash service of summons for lack of personal jurisdiction that a plaintiff is entitled to conduct discovery on the jurisdictional issues. (*1880 Corporation* v. *Superior Court* (1962) 57 Cal.2d 840 [22 Cal.Rptr. 209, 371 P.2d 985].)

■ It is anomolous and unfair to preclude plaintiff from attempting discovery of facts that would establish jurisdiction over defendant in the circumstances of this case.

Presumably Fernseh, Inc. submitted every document and declaration that could support its position. However, significantly absent is any declaration stating that Fernseh, Inc. had no knowledge from its incorporation in October 1979, through the running of the statute of limitations in June 1981, that it had been designated as a defendant or that appearances had been entered on its behalf.

The declaration of Anthony J. Magliocco submitted by Fernseh, Inc. avers that plaintiff's president conceded to the regional sales manager of Fernseh, Inc. after its incorporation that Fernseh, Inc. is a "totally separate corporation from Robert Bosch Corporation" and that plaintiff's action against Robert Bosch Corporation "would in no way affect plaintiff's busi-

ness dealings with Fernseh, Inc." While the significance of these alleged concessions is equivocal, given that plaintiff then believed that Fernseh, Inc. had entered its appearance in the action and was actively defending as a separate corporate defendant, there is a clear implication that Fernseh, Inc. then had knowledge that it was included in plaintiff's action.

The unique circumstances of this case require that plaintiff be permitted to sue Fernseh, Inc. as a fictitiously named defendant upon first discovery of the true capacity of that party and of the spurious nature of the general appearances entered on its behalf. Fernseh, Inc. will suffer no prejudice in preparation of a defense as the law firm now representing it has been defending on behalf of the codefendant since May 1979.

Let a peremptory writ of mandate issue directing respondent to vacate its order granting the motions of Fernseh, Inc. to withdraw from the action and to make a new and different order denying those motions and to proceed according to the views expressed in this opinion. The temporary stay order issued herein shall remain in effect until this decision becomes final as to this court or until respondent fully complies with our direction, whichever occurs first.

McClosky, J., and Amerian, J., concurred.