988 F.2d 121
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Charles ROCCHIO, Plaintiff-Appellant,
v.
EAGLE MISSION, INC., Defendant,
Joel M. Pressman, Defendant-Appellee.
 No. 91-56111.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1993.
Decided Feb. 26, 1993.
 
 Appeal from the United States District Court for the Southern District of California, No. CV-88-0329-H; Earl B. Gilliam, District Judge, Presiding.
 S.D.Cal.
 AFFIRMED.
 Before BEEZER, BRUNETTI and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Charles Rocchio appeals the dismissal of his suit with prejudice against Joel Pressman. He asserts that the district court erred in holding Pressman is not liable for federal securities violations under §§ 12(1) and 12(2) of the Securities Exchange Act of 1933 (15 U.S.C. 771(1) and (2)) and under § 10b of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5). He also claims the district court erred in dismissing his negligence claims under California law on the basis that Pressman owed no duty to him. We affirm.
 
 
 3
 The district court dismissed the suit with prejudice under F.R.C.P. 12b(6). When the district court considers affidavits in deciding to dismiss, as here, the dismissal is treated as a grant of summary judgment. F.R.C.P. 12b(6). We will affirm the grant of summary judgment if, viewing the evidence in the light most favorable to the plaintiff, there are no genuine issues of material fact and the defendant is entitled to prevail as a matter of law. S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir.1982).
 
 
 4
 * Rocchio contends that Pressman is a "person who offers or sells" securities and that he is liable under §§ 12(1) and 12(2) of the Securities Act of 1933.[1] The relevant language of the two statutes are identical so both statutes can be analyzed as one. Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 536 (9th Cir.1989).
 
 
 5
 The Supreme Court, in Pinter v. Dahl, 486 U.S. 622 (1988), considered the question of who "offers or sells a security" such that they are liable under the statute. The Court concluded that a person who engages in "active solicitation," not just one who passes title, may be liable. Id. at 645. Solicitation "is the first stage of a traditional securities sale to involve the buyer, and it is directed at producing the sale." Id. at 646.
 
 
 6
 Though the Court extended liability to those who actively solicit the sale, the Court's decision in Pinter expressed the clear intent not to broaden the statute's interpretation to cover "securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services." Id. at 651; id. at 651 n. 27 (disapproving language which would extend liability to "those who merely assist in another's solicitation."). The Court declined to adopt, as too broad, the substantial factor test, which held persons liable "whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place." Id. at 649; Moore, 885 F.2d at 535.
 
 
 7
 We applied Pinter in Moore. In Moore, we declined to hold attorneys liable under § 12(2) when the professionals had merely "performed professional services," i.e. they had allegedly "drafted or approved the drafting of false or misleading prospectuses and financial documents, and directed the issuance of securities," "participated in meetings where the prospectuses and other promotional materials were drafted," and advised the defendants, among other things. Moore, 885 F.2d at 537.
 
 
 8
 Rocchio's complaint and affidavit do not allege facts from which one could conclude that Pressman actively solicited the purchase. The allegations were that Pressman "participated in sales presentations, drafted necessary documents for the sale, and received part of the consideration paid by plaintiff for previously unpaid legal fees." Drafting documents is merely "performance of professional services," and receiving part of the consideration is irrelevant to the issue of solicitation. As to Pressman's "participation in sales presentations," Rocchio asserts only that Pressman told him that he should move quickly because there was another buyer, and that Pressman was present at other meetings at which Pressman simply agreed with his client Judy Johnson's statements. The earliest of these contacts was made some three weeks after Rocchio and Johnson first met. Johnson herself initiated the contact with Rocchio about the sale, telephoned him a number of times, convinced him to locate a source of financing, and played the salient role in closing the deal. At most, Pressman "merely assisted" in the solicitation. Pinter, 486 U.S. at 651 n. 27.
 
 II
 
 9
 Rocchio also made a claim based on § 10b of the Securities Exchange Act of 1934 and Rule 10b-5. The elements of a Rule 10b-5 violation include a material, false misrepresentation or omission, reliance, scienter, and injury. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1281 (9th Cir.1982). (Rocchio did not plead that Pressman was liable for fraud (Rocchio did bring a claim of fraud against Johnson), nor that he was secondarily liable for aiding and abetting the § 10(b) violation.)
 
 
 10
 The district court noted, in dismissing the claim, that "Rocchio failed to allege what misrepresentations, if any, were made by Pressman." Rocchio did not attribute any affirmative statements to Pressman except that Pressman told him not to wait long because another person was ready to buy. Rocchio does not assert that that statement is false, nor that Pressman knew it to be false if it were false.
 
 
 11
 Rocchio does not lay out, either, what Pressman omitted to say that was material and which Pressman had a duty to divulge. Of the list of misrepresentations made by Johnson, only one statement (about the lease being in technical default) was uttered in Pressman's presence.
 
 
 12
 One cannot be held liable for omitting to disclose material information unless one had a duty to disclose the information. S.E.C. v. Rogers, 790 F.2d 1450, 1459 (9th Cir.1986); Chiarella v. United States, 445 U.S. 222, 228 (1980). This court has set out five factors which should be considered among others in assessing the existence of a duty:
 
 
 13
 "1. The relationship of the defendant to the plaintiff;
 
 
 14
 2. the defendant's access to information as compared to the plaintiff's access;
 
 
 15
 3. the benefit that the defendant derives from the relationship with the plaintiff;
 
 
 16
 4. the defendant's awareness of plaintiff's reliance; and
 
 
 17
 5. the defendant's activity in initiating the securities transaction in question."
 
 
 18
 Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646, 653-54 (9th Cir.1988), cert. denied, 493 U.S. 1002 (1989). Here, Rocchio and Pressman were in an adversarial relationship, and Rocchio signed an agreement disclaiming reliance on Pressman. Rocchio was assisted by his own counsel. The transaction was initiated by Johnson, not Pressman.
 
 III
 
 19
 The district court's interpretation of California law is reviewed de novo. Jewel Companies v. Pay Less Drug Stores Northwest, 741 F.2d 1555, 1559-60 (9th Cir.1984).
 
 
 20
 To prevail on a negligence claim, a plaintiff must show that the defendant breached a duty. Bogard v. Employers' Casualty Co., 164 Cal.App.3d 602, 618 (1985). The district court dismissed all of the state-law based negligence claims against Pressman because Pressman owed no duty to Rocchio. The court reasoned that Pressman owed Rocchio no duty "since Rocchio was represented by his own attorney during the stock purchase negotiations."
 
 
 21
 The California courts have been careful to restrict attorneys' liability to third persons for negligence. Kimmel v. Goland, 793 P.2d 524, 531 n. 10 (Cal.1990). In Skarbrevik v. Cohen, England and Whitfield, 231 Cal.App.3d 692 (1991), the court held that "[a]bsent either an individual duty to the plaintiff or a personal financial interest in the matter," an attorney is not bound to disclose information, in that case facts relating to dilution of minority shareholders' shares. Id. at 710-11. (Here, Rocchio alleged on information and belief that Pressman refused to get involved in the instant negotiations until Johnson agreed to pay a large amount of outstanding legal fees, an allegation that Pressman denied in his sworn affidavit. Allegations "based solely on information or belief are insufficient to withstand a motion for summary judgment." Wallace v. Chappell, 661 F.2d 729, 737 (9th Cir.1981), rev'd on other grounds, 462 U.S. 296 (1983).)
 
 
 22
 Rocchio challenges the dismissal of the negligence claims on the basis of Cicone v. URS Corp., 183 Cal.App.3d 194 (1986). In that case, the court held that "a duty is owed by an attorney not to defraud another, even if that other is an attorney negotiating at arm's length." Id. at 202. The Cicone court held that "a duty is owed to others to refrain from intentionally tortious conduct." Id. In cases such as this, however, where the complaint alleged merely that Pressman knew Rocchio was relying on his expertise and was negligent in failing to make adequate disclosures and to register the securities, attorneys have not been found liable under California law. The Skarbrevik court distinguished Cicone, on the basis that Cicone involved "actual fraud" and did not apply to "constructive fraud where that charge rests on a fiduciary duty of disclosure owed only by the client." Skarbrevik, 231 Cal.App.3d at 711. Here Johnson, not Pressman, was charged with fraud.
 
 
 23
 Nor is it reasonable for Rocchio to hold another party's attorney responsible for, among other things, legal expertise, especially when Rocchio had hired his own attorney and financial advisor. As the court in Skarbrevik noted, "[t]here was no basis for plaintiff to place special trust or confidence in [Pressman], or for him to rely on [Pressman] to act in his best interest." Id. at 710. See also id. at 707 ("plaintiff was at that time a potential adverse party whose interests could not be, and were not, represented by his adversaries' chosen counsel, whose duty of loyalty was to his own client"); Fox v. Pollack, 181 Cal.App.3d 954, 961 (1986); Omega Video, Inc. v. Superior Court, 146 Cal.App.3d 470, 480 (1983). Nor was Rocchio an intended beneficiary of Pressman's representation. See, e.g., Goodman v. Kennedy, 556 P.2d 737, 743 (Cal.1976).
 
 The dismissal of the plaintiff's suit is
 
 24
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Rocchio raised state securities law claims that were dismissed on the same basis as the federal claims by the district court. Rocchio does not claim error in analyzing the state and federal claims together, nor does he argue the state law claim separately in his brief. This analysis thus applies to Rocchio's state law securities claims as well